UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
TONY DUNBAR,

                Petitioner                NOT FOR PUBLICATION
                                                 **MEMORANDUM & ORDER**
  -against-                                   No. 11-CV-5858

T. GRIFFIN,

                Respondent.
------------------------------------------------------x

**AMON, United States District Judge:**

      Respondent has moved to vacate the May 18, 2012 stay in this case and to dismiss the petition for failure to comply with the terms of the order granting that stay. For the reasons stated below, decision is reserved on Respondent's motion pending further briefing.

## BACKGROUND

      On November 25, 2011, Petitioner Tony Dunbar ("Dunbar") filed a <u>pro se</u> petition for habeas corpus pursuant to 28 U.S.C. § 2254. He also filed a motion to stay this case "so that he can exhaust additional claims in state court through a post-judgment collateral motion pursuant to N.Y. CPL § 440.10." (D.E. # 10.) I granted the request for a stay, subject to certain conditions:

> This stay is conditioned on the petitioner filing his N.Y. CPL § 44[0].10 motion within 30 days of his receipt of the District Attorney's response to his FOIL request . . . . The petitioner shall return to this Court and file an amended habeas petition within thirty (30) days of a final state court decision on his § 44[0].10 motion. **The petitioner is warned that if he fails to file an amended habeas petition within thirty (30) days of a final state court decision on his § 44[0].10 motion, the stay will be vacated** and he may well find himself time-barred from resubmitting his claim in a federal habeas corpus petition.

(Id. at 2 (emphasis added).[1])

This case remained dormant for the next eight years. On February 8, 2021, Dunbar—now represented by counsel—reappeared to request a briefing schedule for his amended petition. Dunbar's counsel reported that, while this case had been stayed, Dunbar "filed a pro se motion to vacate, which was denied . . . and this office filed a motion to vacate, which was ultimately denied . . . on January 22, 2021." (D.E. # 12.) In filing his request on February 8, 2021—seventeen days after January 22, 2021—Dunbar appeared to comply with the order that he return to this Court within thirty days of a final state court decision. That same day I granted the request and ordered a briefing schedule.

Respondent then filed the instant motion to vacate the stay and dismiss the petition as untimely. The government's motion identified facts not disclosed in Dunbar's letter. As set forth in the government's papers, the following undisputed timeline of events unfolded:

- August 8, 2012: Dunbar is denied leave to appeal his coram nobis motion.
- September 4, 2015: Dunbar files a pro se § 440.10 motion.
- June 16, 2016: Dunbar's pro se § 440.10 motion is denied.
- July 11, 2017: Dunbar is denied leave to appeal his pro se § 440.10 motion.
- March 6, 2020: Dunbar, represented by counsel, files a second § 440.10 motion.
- September 3, 2020: Dunbar's second § 440.10 motion is denied.
- January 22, 2021: Dunbar is denied leave to appeal his second § 440.10 motion.

(See D.E. ## 13, 16 and exhibits.) These events were not disclosed in Dunbar's request to set a briefing schedule for his amended petition.[2] Dunbar filed a three-page letter brief, without exhibits, responding to the government's motion. The government then filed a reply letter.

---

[1] The order granting the stay referred to a "N.Y. CPL § 44**1**.10 motion," but in context this was clearly a typographical error meant to refer to a § 44**0**.10 motion. Dunbar's stay request had referenced only a "motion pursuant to CPL 440.10," (D.E. ## 9, 9-1 at 2, 3), and the New York Criminal Procedure Law does not contain a section 441.10.

[2] Dunbar's letter referred to an "Exhibit A," but no exhibit was filed. (D.E. # 12.)

2

**LEGAL STANDARD**

A prisoner in state custody seeking to file a federal writ of habeas corpus must (1) first give the state courts a chance to rule on his claims (i.e., he must "exhaust" those claims); and (2) file the federal habeas petition within one year of his state conviction becoming final. 28 U.S.C. § 2244(d); Rhines v. Weber, 544 U.S. 269, 273-74 (2005). To facilitate these related requirements, the federal habeas statute ("AEDPA") pauses the one-year filing deadline during the pendency of a "properly filed application for State post-conviction or other collateral review . . . ." 28 U.S.C. § 2244(d)(2); see Rhines, 544 U.S. at 274-75. This tolling provision allows a petitioner to first exhaust his claims in state court without running afoul of the one-year deadline. Sometimes, however, a petitioner will file a federal habeas petition that contains both exhausted and unexhausted claims—a so-called "mixed petition." Faced with such a petition, a district court may stay the case and hold the petition in abeyance to provide the petitioner an opportunity to exhaust the unexhausted claims in state court. Rhines, 544 U.S. at 279.

This stay-and-abeyance procedure is "available only in limited circumstances," and its application must "be compatible with AEDPA's purposes." Id. at 276-77 (noting that "AEDPA does not deprive district courts of" the authority to issue stays, "but it does circumscribe their discretion"). Those purposes are (1) to reduce delays in collateral federal proceedings, and (2) to encourage petitioners to resort first to the state courts before filing federal habeas petitions. Id. The stay-and-abeyance procedure "has the potential to undermine these twin purposes . . . by allowing a petitioner to delay the resolution of the federal proceedings" and "by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Id. at 277. Accordingly, "[a] mixed petition should not be stayed indefinitely," and courts "should place reasonable time limits on a petitioner's trip to state court and back." Id. at 277–78.

3

## DISCUSSION

The government contends that Dunbar failed to comply with the terms of the stay, because he did not diligently pursue his § 440.10 motion and did not return to this Court within thirty days of that motion being denied.[3] Accordingly, the government moves to (1) vacate the stay nunc pro tunc, and (2) dismiss the petition as untimely. Dunbar does not dispute the government's timeline of events. (See D.E. # 15.) Instead, he raises various arguments why his belated filing should be excused. (Id. at 1.)

### I. Dunbar's failure to comply with the conditions of the stay

The stay that issued in May 2012 expressly "warned" Dunbar that "if he fails to file an amended habeas petition within thirty (30) days of a final state court decision on his § 44[0].10 motion, the stay will be vacated." He received a final state court decision on his § 440.10 motion on July 11, 2017. But he did not return to this court until over three years later. I recognize that Dunbar returned to this Court within thirty days of the denial of his second § 440.10 motion. But the May 2012 order required him to return to this Court within thirty days of the decision on a particular § 440.10 motion—the one which Dunbar had referred to in his request for a stay. (See D.E. # 9-1 at 2-3 (stating that Dunbar "intends to submit a . . . motion pursuant to CPL 440.10" and referring to the claims pursued in his first § 440.10 motion).) The stay order did not permit Dunbar to pursue § 440.10 motions ad infinitum and return to this Court at the time of his choosing. Nor did filing a second § 440.10 motion have any ability to toll Dunbar's deadlines in

---

[3] The government also suggests that this case should be dismissed for failure to diligently prosecute it. Such a severe remedy would be unwarranted here given that Dunbar has been in recent contact with the Court. See LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001). The May 2012 order warned Dunbar that failure to comply with its terms would lead to the stay being vacated—not this case being immediately dismissed. The government's argument for complete dismissal overlooks the fact that Dunbar did file a Petition in 2011, which the government has not argued was untimely and which might therefore be properly considered. See Johnson v. Conway, No. 9-cv-95, 2011 WL 815265, at *1 (W.D.N.Y. Mar. 2, 2011) ("Petitioner did not file an amended petition in accordance with the conditions of the Court's [stay] order . . . . Accordingly, the Court proceeded to evaluate the original petition and review petitioner's exhausted claims on the merits.").

his federal habeas case: by the time his second § 440.10 motion was filed in March 2020, AEDPA's one-year deadline would have long since expired but for the 2012 stay order. See Rodriguez v. Burge, No. 2-cv-4594 (CBA), 2007 WL 13413, at *2 n.1 (E.D.N.Y. Jan. 2, 2007) ("The one-year statute of limitations was not tolled by Rodriguez's second 440.10 motion, as it was not filed until . . . after the statute of limitations had expired.").

Because Dunbar failed to file an amended habeas petition within thirty days of the decision on his first § 440.10 motion, he failed to comply with the conditions of the stay. And if a "condition of the stay is not met, the stay may later be vacated nunc pro tunc as of the date the stay was entered . . . ." Zarvela v. Artuz, 254 F.3d 374, 381 (2d Cir. 2001); see also Johnson v. Conway, No. 9-cv-95, 2011 WL 815265, at *2 (W.D.N.Y. Mar. 2, 2011) ("This Court did vacate the stay . . . after petitioner failed to file his amended petition as directed . . . ."); Taylor v. Brown, No. 6-cv-7675, 2009 WL 400365 (S.D.N.Y. Jan. 30, 2009), report and recommendation adopted, 2009 WL 2448587 (S.D.N.Y. Aug. 11, 2009) (dismissing petition for failure to comply with stay-and-abeyance procedures); Johnson v. Girdich, No. 3-cv-5086, 2005 WL 427576, at *6 (S.D.N.Y. Feb. 23, 2005) ("It is not reasonable for Petitioner to have expected that no consequences would follow from his failure to comply with the 30-day condition of the Order staying his petition." (emphasis omitted)). In light of the important interests at stake in a habeas corpus petition, courts normally allow a prisoner the opportunity to explain his tardiness before dismissing a petition. E.g., Taylor, 2009 WL 400365, at *1 (providing petitioner with an opportunity to file an affidavit "showing cause why the one-year statute of limitations of [AEDPA] should not bar his petition"); Girdich, 2005 WL 427576, at *1 ("[T]he Court directs Petitioner to give answers under oath to a set of interrogatories appended to this Memorandum

and Order, in order to enable the Court to determine whether the petition should be dismissed as time-barred").

## II. Dunbar's justifications for his belated filing

Dunbar offers two reasons why he believes his belated arguments should nevertheless be heard.[4] I address each in turn.

### A. Equitable tolling

Dunbar first argues that he "is entitled to equitable tolling." (D.E. # 15 at 1.) Courts have the power to equitably toll the one-year deadline to bring a § 2254 claim in "exceptional circumstances." Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000). Dunbar contends that such circumstances exist here because he is "an uneducated poor person with limited resources . . . who d[id] not have the means to hire attorneys and [is] uneducated in the field of law." (D.E. # 15 at 1.) This claim fails, however, because "neither [a petitioner's] pro se status nor his professed ignorance of the law demonstrate 'rare and exceptional circumstances' warranting equitable tolling." Rudaj v. Treanor, 522 F. App'x 76, 77 (2d Cir. 2013) (internal alteration omitted) (quoting Smith v. McGinnis, 208 F.3d 13, 18 (2d Cir. 2000)).

### B. Actual Innocence

Dunbar next argues that he is actually innocent. (D.E. # 15 at 1.) A habeas petitioner can overcome AEDPA's one-year statute of limitations by making a demonstration of actual

---

[4] Dunbar also argues that finding his petition to be procedurally barred would "run[] afoul of the holding and logic of . . . Martinez v. Ryan, [566 U.S. 1,] 132 S. Ct. 1309 (2012)." (D.E. # 15 at 2.) His reliance on Martinez is misplaced. That case involved a question of whether a petitioner had shown "cause for a procedural default." 566 U.S. at 9. The government's motion seeks dismissal not on the basis of a procedural default (e.g., the existence of an adequate and independent state-law ground) but due to "failure to comply with this Court's 2012 Order and failure to prosecute the petition in a timely manner." (D.E. # 13 at 2.) See Cabeza v. Griffin, No. 14-cv-733, 2014 WL 3695114 (E.D.N.Y. July 23, 2014) ("Martinez is inapplicable to the determination of timeliness under AEDPA's one-year statute of limitations . . . ."). In any event, courts have held the "narrow exception" recognized in Martinez does not apply in New York courts, because "New York law is unlike Arizona law, which was at issue in Martinez." Glover v. Filion, No. 6:04-cv-6329, 2014 WL 1279091, at *3 (W.D.N.Y. Mar. 27, 2014) ("Under New York law," unlike in Arizona, "some claims of ineffective assistance can be brought on direct appeal.")

innocence.  McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).  This showing of actual innocence "serves as a gateway through which a petitioner may pass" to overcome the expired statute of limitations.  Id.  Such a showing must be "credible and compelling."  Rivas v. Fischer, 687 F.3d 514, 518 (2d Cir. 2012).  A "credible" showing is one "supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'"  Id. at 541 (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)).  For a claim to be "compelling," a petitioner must show it to be "'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt . . . .'"  Id. (quoting House v. Bell, 547 U.S. 518, 538 (2006)).

Dunbar's letter brief states his intention to introduce evidence which was not presented at trial.  He refers to an "expert report" from an "identification expert."  He also refers to "four affidavits," which appear to be (from a review of Dunbar's state court proceedings) sworn statements of a private investigator, Elpidio Deleon, and of Dunbar's mother and two brothers.  (See D.E. # 16-11 at 6, 7, 12.)  Expert testimony may serve as the factual basis for a gateway claim of actual innocence.  E.g., Rivas, 687 F.3d at 543-44 ("Without doubt, therefore, the centerpiece of Rivas's actual-innocence claim is the affidavit and testimony provided by [a forensic pathology expert]").  But Dunbar's letter brief to this Court did not attach the evidence that allegedly supports his actual innocence claim, and provided only limited argument on the issue.

Because the issue of whether Dunbar's amended petition is time-barred should be considered before the merits of that petition, see Lambrix v. Singletary, 520 U.S. 518, 525 (1997), the parties should fully brief the gateway issue of Dunbar's actual innocence claim.  Dunbar shall file with his opening brief on this issue all of the evidence upon which the actual

7

innocence claim is predicated—e.g., the affidavits of any expert or fact witnesses, and any other documentary evidence he alleges to support the claim.

## CONCLUSION

For the reasons stated, I reserve decision on Respondent's motion pending further briefing on the issue of whether Dunbar's belated filing should be excused due to actual innocence. The briefing deadlines entered on April 30, 2021 are vacated. Dunbar's opening brief, limited to the issue of actual innocence, shall be filed no later than May 28, 2021. Respondent's opposition shall be filed no later than June 18, 2021. Dunbar's reply, if any, is due July 2, 2021. Should I determine that Dunbar has made the necessary showing to pass through the actual innocence gateway, an order setting a further briefing schedule shall follow.

SO ORDERED.

Dated: May 11, 2021
      Brooklyn, New York                    /s/ Carol Bagley Amon
                                                    Carol Bagley Amon
                                                    United States District Judge